```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND


ANDREA CORNISH                  *
                                *
                                *
v.                              *    Civil Action No. WMN-16-672
                                *
DELI MANAGEMENT, INC., d/b/a    *
"JASON'S DELI"                  *
                                *
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

## MEMORANDUM AND ORDER

Before the Court is a motion to dismiss filed by Defendant Deli Management, Inc. ECF No. 13. The motion is fully briefed. Upon a review of the pleadings and the applicable case law, the Court determines that no hearing is necessary, Local Rule 105.6, and that the motion will be denied.

According to the Complaint, Defendant Deli Management, Inc. operates approximately 253 "Jason's Deli" restaurants in 29 different states, including Maryland. Plaintiff Andrea Cornish was employed as a delivery driver at Defendant's Jason's Deli restaurant in Timonium, Maryland, from the spring of 2013 through April 2014. Defendant requires its drivers to use their own vehicles to make their deliveries. Plaintiff alleges that, as a result of Defendant's failure to adequately reimburse her for car expenses, her wages fell below the federal and state minimum wage. She brings this action, individually and on

behalf of other similarly situated delivery drivers, under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. § 3-401 et seq.

Defendant has moved to dismiss the Complaint under Rule 12(b)(6) on the ground that Plaintiff's allegations are too vague and speculative to state a plausible claim for relief. Defendant also argues that Plaintiff's conclusory allegations concerning "similarly situated employees" do not support a plausible claim for either class action or collective action relief. In addition, Defendant argues that Plaintiff is not entitled to liquidated damages under the MWHL because Plaintiff stopped working for Defendant before July 1, 2014, the effective date of the amendment that added the remedy of liquidated damages to the MWHL. As to the claim for liquidated damages, Plaintiff acknowledges that she is not entitled to those damages but suggests that she still has standing to pursue those damages on behalf of putative class members who were employed after the effective date of the amendment.

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the

elements of a cause of action." Id. at 555.  Rather, the complaint must be supported by factual allegations, "taken as true," that "raise a right to relief above the speculative level." Id. at 555-56.  The plausibility standard requires that the pleader show more than a sheer possibility of success, although it does not impose a "probability requirement." Twombly, 550 U.S. at 556.  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 663.  Thus, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief.  Id. at 664; see also Brockington v. Boykins, 637 F.3d 503, 505-06 (4th Cir. 2011).

The parties generally agree on the relevant law governing Plaintiff's FLSA and MWHL claims.  The FLSA requires covered employers to pay "nonexempt employees" a minimum wage for each hour worked.  29 U.S.C. § 206(a).  There is no dispute that Defendant is a covered employer and that its drivers are nonexempt.  While Plaintiff was working for Defendant, the federal minimum wage was $7.25.  The MWHL parallels the FLSA and, during the relevant time period, also required the payment of a minimum wage of $7.25.  Md. Code Ann., Lab. & Empl. § 3-413.  Because MWHL law mirrors the FLSA, claims under MWHL stand

or fall on the success of a plaintiff's FLSA claim.  Turner v. Human Genome Science, Inc., 292 F. Supp. 2d 738, 744 (D. Md. 2003).

Plaintiff acknowledges that she was paid $8.00 per hour, or 75 cents more than the minimum wage, while working for Defendant.  Compl. ¶ 21.  In addition, Plaintiff was reimbursed at a rate of $1.75 for each delivery she made, purportedly to cover the expenses incurred in utilizing her own vehicle, a 2000 Ford Taurus, to make those deliveries.  Id. ¶¶ 24, 25.  She maintains, however, that her per-delivery expenses exceeded that reimbursement.  Plaintiff asserts that the average round-trip delivery distance was 6 miles and she averaged approximately one delivery event per hour.  Id. ¶¶ 26, 30.  Plaintiff also alleges that her "actual automobile expenses were at the very least $.44 per mile."  Id. ¶ 29.  If accurate, that under-reimbursement of $.89 would result in an effective hourly rate of only $7.11, or $.14 below the federal and state minimum wage.

While the FLSA itself does not address an employer's reimbursement of expenses, the regulations implementing the statute do.  Those regulations provide that "the wage requirements of the [FLSA] will not be met where the employee 'kicks-back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee."  29 C.F.R. § 531.35.  A

kickback occurs when the cost of tools that are specifically required for the performance of the employee's particular work "cuts into the minimum or overtime wages required to be paid him under the Act."  Id.  As applied in the context of delivery drivers, the regulations "permit an employer to approximate reasonably the amount of an employee's vehicle expenses without affecting the amount of the employee's wages for purposes of the federal minimum wage law."  Wass v. WKRP Management, LLC, 688 F. Supp. 2d 1282, 1285-86 (D. Kan. 2010).  If, however, the employer makes an unreasonable approximation, the employee can claim that his wage rate was reduced because her expenses were not sufficiently reimbursed.  Id. at 1287.

The Complaint asserts that delivery drivers "incur costs for gasoline, vehicle parts and fluids, repair and maintenance services, insurance, depreciation, and other expenses."  Compl. ¶ 11.  While Plaintiff did not track her actual automobile expenses, she asserts that her "actual automobile expenses were at the very least $.44 per mile based on the true cost of owning a car calculated by Edmunds.com for comparable vehicles and based on driving 15,000 miles per year."  Id. ¶ 29.  Plaintiff's reliance on the Edmunds.com website's "true cost to own" (TCO)[1]

---

[1] See "About True Cost to Own®," http://www.edmunds.com/about/more-about-tco.html (last visited Sept. 15, 2016).  Because Plaintiff relies on this edmunds.com website in her Complaint, the Court can consider the information contained on that website

5

as a proxy for her own actual expenses is the primary focus of Defendant's Motion and Reply.  See ECF No. 13-1 at 9-13; ECF No. 15 at 6-8.

Defendant raises a number of challenges to Plaintiff's reliance on Edmunds.com's TCO.  First, Edmunds generates its TCO using a proprietary formula that factors in seven cost categories: depreciation, insurance, financing, taxes & fees, fuel, maintenance, and repairs.  Because the formula is proprietary, Defendant proffers that there is no meaningful way to discern how it is calculated and thus, to assess if Plaintiff's expenses are similar to those of the "comparable vehicles" she references.  As Defendant notes, and Plaintiff does not contest, Edmunds only calculates TCOs for vehicles manufactured in or after 2010 and Plaintiff alleges she drove a 2000 Ford Taurus.  Depreciation, insurance, and financing costs for a 2000 Taurus could be significantly less than those for a 2010 Taurus, assuming that is the comparable vehicle referenced by Plaintiff.  Furthermore, Edmunds cautions that its TCO is a

---

in ruling on the motion to dismiss.  Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999) (stating that documents outside of the complaint may be considered by the court upon a motion to dismiss if "integral to and explicitly relied on in the complaint"); Virdis Dev. Corp. v. Bd. of Supervisors of Chesterfield Cty., Va., 92 F. Supp. 3d 418, 421 n.4 (E.D. Va. 2015) (applying the holding of Phillips to a website).  Facts concerning the TCO cited by the Court in the discussion that follows are all taken from this webpage.

"comparative tool, not a predictive tool" and that the actual costs of owning a particular vehicle "will vary depending on your personal circumstances, such as your driving history and the number of miles you drive."

In its motion, Defendant indicated that it was unable to discern which specific vehicles Plaintiff actually used to generate a 44 cent per mile TCO. ECF No. 13-1 at 12. Defendant represents that the TCO for a 2010 Ford Taurus is calculated at 39 cents per mile. Id. Using that figure, Plaintiff's effective wage would be $7.41 per hour, a figure above the minimum wage. In opposing the motion, Plaintiff criticizes Defendant for "blatantly ignoring that Plaintiff does not cite Edmund's data for her particular 2000 Ford Taurus," but "'for comparable vehicles.'" ECF No. 14 at 20-21 (quoting Compl. ¶ 29, emphasis added in Opp'n). Plaintiff, however, provides no additional information as to what those "comparable vehicles" might be nor does she explain how her $.44 per mile figure was generated.

If, in her Complaint, Plaintiff had relied exclusively on the Edmunds TCO estimate, the Court would be inclined to grant the motion to dismiss. Plaintiff, however, also references the business mileage reimbursement rate published by the Internal Revenue Service (IRS), which ranged between $.54 and $.575 during the relevant time period, and the American Automobile

7

Associations estimate of the "average cost for owning and operating a sedan," which ranged "between $.58 and $.608 for drivers who drive a sedan approximately 15,000 miles per year." Compl. ¶ 14. While it is true, as Defendant asserts, that employers are not required to reimburse at the IRS rate, at least some courts have held that, if employers fail to do so, they must "keep detailed records of the employees' expenses to justify another reimbursement rate." Zellagui v. MCD Pizza, Inc., 59 F. Supp. 3d 712, 716 (E.D. Pa. 2014); see also, Gattuso v. Harte-Hanks Shoppers, Inc., 169 P.3d 889, 896 (Cal. 2007) (holding, in the context of a California statute mandating reimbursement of employees' expenses, that "[i]f an employer wants to pay less than the established IRS rate, it bears the cost of proving the employee's cost of operating the vehicle for work is actually less"). Furthermore, the Department of Labor (DOL) Field Operations Handbook instructs that, for minimum wage purposes, an employer may either reimburse employees who drive a personal vehicle for business use at the IRS standard business mileage rate or keep accurate, contemporaneous expense records and reimburse the employee accordingly.  DOL Field Operations Handbook § 30c15(a) (issued 6/30/2000).

In opposing the motion to dismiss, Plaintiff relies primarily on four cases from three federal district courts

denying motions to dismiss collective actions brought by delivery drivers.  The cases relied upon are:

>   Wass v. NPC Int'l, Inc., d/b/a "Pizza Hut," Case No. 09-2254-JWL (D. Kan.); Complaint (ECF No. 14-1), Opinion granting motion for leave to file third amended complaint (2010 WL 7762621 (Sept. 1, 2010));
>
>   Perrin v. Papa John's Int'l, Inc., Case No. 4:09-cv-01335 (E.D. Mo.), Complaint (ECF No. 14-2), Opinion granting in part and denying in part motion to dismiss (818 F. Supp. 2d 1146 (Mar. 8, 2011));
>
>   Darrow v. WKRP Mgmt., d/b/a "Pizza Hut", Case No. 09-cv-01613-CMA-BNB (D. Colo.), Complaint (ECF No. 14-3), Opinion denying motion to dismiss (2011 WL 2174496 (June 3, 2011)); and
>
>   Smith v. Pizza Hut, Inc., Case No. 09-cv-01632-CMA-BNB (D. Colo), Complaint (ECF No. 14-4), Opinion granting in part and denying in part motion to dismiss second amended complaint (2011 WL 2791331 (July 14, 2011)).

Plaintiff closely patterned the instant Complaint after the complaints in these four cases.

The decisions of these three courts, of course, are not binding authority on this Court.  This Court, however, does find them persuasive.  Of note, in two of those four decisions, the courts found that alleging reimbursement rates below that of the IRS business mileage reimbursement rate was sufficient to satisfy the Iqbal/Twombly plausibility standard, rejecting the same arguments that Defendant advances here.  Perrin, 818 F. Supp. 2d at 1149 (rejecting challenge to the plaintiff's reliance on the IRS business mileage rate and AAA rate); Darrow, 2011 WL 2174496, at *4 (finding that the plaintiff satisfied the

9

pleading requirement "by supporting the reasonableness of his estimate through reference to the IRS business mileage reimbursement rate").

In seeking to distinguish this case from those on which Plaintiff relies, Defendant notes that the gap between what the defendant employers reimbursed and what the plaintiff employees alleged their expenses to be was much greater in those cases than in the instant case. The cases relied upon by Plaintiff do reference the magnitude of the reimbursement gap. In Wass, the court permitted the claims to go forward after concluding that the "reimbursement gap of at least $1.50 per hour is sufficiently large to support a plausible claim that the under-reimbursements brought the drivers' pay below the federal minimum wage." 2010 WL 7762621, at *4 (emphasis added).

In Smith, the plaintiff had "documented automobile expenses of approximately $.35 per mile" during the relevant time period but also sought to rely on the IRS business mileage rate of $.58 per mile. The court concluded it did not need to decide if reliance on that rate was reasonable because it found that the documented $.35 per mile resulted in an under-reimbursement of $1.89 per hour and that under-reimbursement was a "large enough gap" to support the claim that the defendant failed to reasonably approximate the plaintiff's expenses. 2011 WL 2791331, at *4. Because this under-reimbursement also resulted

in a wage that was $.95 below the federal minimum wage, the court found that the facts alleged supported a plausible claim for a minimum wage violation. Id.  In Perrin, the court found that the plaintiff's figures yielded an under-reimbursement of approximately $2.55 per hour and, because plaintiff's wage was only $.25 over the minimum wage, concluded that this under-reimbursement rate supported a claim for minimum wage violation. 818 F. Supp. 2d at 1150.  In Darrow, the court found an under-reimbursement rate of $1.45 per delivery and that plaintiffs made an average of two or three deliveries per hour and, thus, this reimbursement gap was 'significant enough to support a plausible claim that defendant failed to approximate reasonably its drivers' expenses.'"  2011 WL 2174496, at *1, *5 (quoting Wass, 2010 WL 7762621, at *2).

While Plaintiff's reimbursement gap based on the Edmunds TCO figure is smaller than the gap in these other cases, it still results in a wage below that mandated by the FLSA and MWHL.  Furthermore, applying the IRS business reimbursement rate, which is also referenced in the Complaint, results in a reimbursement gap similar to that in the cases upon which Plaintiff relies.  While Plaintiff may have a more difficult task proving her claims than the plaintiff delivery drivers in these other cases, at this stage of the litigation she has set

11

forth sufficient allegations to support plausible FLSA and MWHL claims.

The Court concludes that she has also sufficiently established that other delivery drivers employed by Defendant are similarly situated for purposes of a class or collective action. At this stage in the litigation, support for a collective action requires "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." Theissen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1105 (10th Cir. 2001); Butler v. DirectSAT USA, LLC, 876 F. Supp. 2d 560, 566 (D. Md. 2012) (noting that "similarly situated" for purposes of a FLSA collective action "does not mean identical," but "[r]ather, a group of potential FLSA plaintiffs is 'similarly situated' if its members can demonstrate that they were victims of a common policy, scheme, or plan that violated the law"). Here, Plaintiff alleges that Defendant's delivery drivers "were subject to the same reimbursement policy; received similar reimbursements; incurred similar automobile expenses; completed drives to catering events and deliveries of similar distances and at similar frequencies; and were paid at or near the federal minimum wage before deducting unreimbursed business expenses." ECF No. 1 ¶ 32. At this stage, that is sufficient.

Finally, as noted above, the possibility of recovery of liquated damages under the MWHL was not added to the statute until July 1, 2014, which was after Plaintiff ceased employment with Defendant.  Furthermore, this Court has determined that this amendment "does not apply retroactively." McFeeley v. Jackson Street Entertainment, LLC, Civ. A. No. DKC 12-1019, 2015 WL 570303, at *1 n.2 (D. Md. Feb. 10, 2015).  As also noted above, Plaintiff acknowledges that she is not entitled to liquidated damages but contends that she has standing to pursue those damages on behalf of members of the putative class who were employed as of or after July 1, 2014.  ECF No. 14 at 21.  Defendant did not respond to this standing argument in its Reply.  While dates of employment and, thus, potential entitlement to liquidated damages might result in the need for subclasses should a conditional or class action be certified, the Court will permit the prayer for liquidated damages to remain in the Complaint at this time.

Accordingly, IT IS this 12th day of October, 2016, by the United States District Court for the District of Maryland, ORDERED:

(1) That Defendant's Motion to Dismiss, ECF No. 13, is DENIED; and

(2) That the Clerk of the Court shall transmit a copy of this Memorandum and Order to all counsel of record.

```
            _____/s/_____
            William M. Nickerson
            Senior United States District Judge
```